UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ARREST ) <br> OF RYAN JAMES GAGNET PURSUANT ) <br> TO A CRIMINAL COMPLAINT ) <br> ) | CASE NO. <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Sara Pedersen, being duly sworn, hereby depose and states as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation (the "FBI"), and, as such, I am an investigative or law enforcement officer of the United States within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am engaged in the enforcement of criminal laws and am within a category of officers authorized by the Attorney General to request and execute search warrants pursuant to Title 18 U.S.C. §§ 3052 and 3107; and DOJ regulations set forth at Title 28 C.F.R. §§ 0.85 and 60.2(a).

2. I am a Special Agent with the FBI and have been since June of 2014. I am currently assigned to the Toledo Resident Agency in the Cleveland Division. My educational background includes study in the field of criminal justice, psychology, and the law. Prior to becoming a Special Agent, I worked as a criminal defense attorney for approximately six years at the state court level.

3. My experience as an FBI agent includes the investigation of national-security cases involving individuals seeking to travel overseas to commit violent jihad, those who have participated in terrorist fundraising, those who desire to commit domestic acts of terrorism, and those who have sought to commit acts of violence in the United States. Additionally, I have

completed FBI administered counterterrorism classroom and online training at the FBI Academy and at other FBI facilities.

4. My experiences as an FBI agent also includes the investigation of criminal cases, including racketeering, healthcare fraud, crimes against children, murder, kidnapping, and drug trafficking cases.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875 (c) (interstate communications – threat to injure) have been committed by Ryan James Gagnet while located at his residence: ▮

## II. PROBABLE CAUSE

7. On or about February 5, 2020, FBI Chicago viewed a publicly available Twitter account. The Twitter account posted a screenshot of a conversation with an anonymous Omegle[1] user who wrote, "Hi. It's going to be even more scary tomorrow. Because I'm going to be on the news. Commit a mass shooting. In shorewood Illoinis(.)"

8. On or about February 6, 2020, the user of the Twitter account was identified and interviewed. The Twitter user stated that he/she chatted with the anonymous Omegle user for approximately three minutes on February 4, 2020, and confirmed receiving the threat.

---

[1] Omegle is an online chat platform that randomly pairs users in one-on-one chat sessions. The users do not have to register for an account and can chat anonymously. The user names in the chat appear as "You" and a variant of "Stranger."

9. On or about February 6, 2020, it was determined through information provided by Omegle, the internet protocol ("IP") address of the anonymous Omegle user was registered to Buckeye Cablevision.

10. On or about February 7, 2020, it was determined through information provided by Buckeye Broadband, the IP address on the date and time in question was assigned to James Gagnet ("James") of ███████████████████████████

11. On or about February 7, 2020, it was determined through open-source searches that the anonymous Omegle user was likely James' son, Ryan James Gagnet ("Ryan"), who also resided at ███████████████████████████

12. On or about February 7, 2020, agents interviewed Ryan at his residence. During the interview Ryan stated, "Maybe 3 days ago . . . I went on Omegle . . . I was wearing a mask, and I was telling people that ah that there may be a mass shooting at some point. . . . then I would just see how ah their frightened reactions."

13. On or about February 7, 2020, during the above-stated interview, Ryan also stated, "It was a one ah night thing. . . . I may have talked to a dozen or so. . . . I would say . . . do you want to see my face? And then they would say yes. And then I would say, well you are going to see my face on the news. . . . And they would say why? . . . And I would say . . . because of what I am ab-going to do." Ryan also indicated there would be disturbing searches on his electronic devices.

14. On or about February 8, 2020, Deputy Chief Eric Allen ("Deputy Chief Allen") of the Village of Shorewood, Illinois, Police Department provided an impact statement and gave the following information: Shorewood, Illinois, is a village of 18,000 residents. Shorewood,

Minooka, and the west side of Joliet have five public school districts and about a dozen private schools. The Shorewood Police Department has 30 sworn officers.

15. On or about February 8, 2020, Deputy Chief Allen's impact statement further stated that due to the threat, meetings and essential duties involving the police department were canceled for two days. Officers' regular shifts and assignments were changed to address the threat. Ten officers worked overtime, which cost the village approximately $1,872. Officers were present at that schools and in the school districts. Notification was made to numerous schools, which created panic throughout the Shorewood, Minooka, and Joliet area. As a result, the Shorewood Police Department became overwhelmed with calls and demands for information from the public regarding the threat.

16. On or about February 8, 2020, Deputy Chief Allen's impact statement also stated as a result of the threat, nearly all the schools operated on a soft-lockdown for two days; therefore, outdoor recess was canceled and students were not allowed to leave the classrooms unless necessary. One school hired two officers for special detail. Many school principals reported that each day, six to ten parents pulled their children from school on one or both days.

**(intentionally blank)**

## III. CONCLUSION

17. Based on the foregoing, your Affiant respectfully submits there is probable cause to believe that Ryan James Gagnet violated Title 18, United States Code, Section 875(c).

Respectfully submitted,

_____
Sara Pedersen
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February 10, 2020.

_____
Honorable Jack Zouhary
UNITED STATES DISTRICT JUDGE